UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :

  UNITED STATES OF AMERICA           :

                                            :

               - v. -                  :

                                            :

  RANDY TORRES,                       :

        a/k/a "Rico,"             :     S8 16 Cr. 809 (VM)

  WALSTON OWEN,               :

        a/k/a "Purpose,"        :

        a/k/a "Purp," and      :

  CHARLES VENTURA,           :

        a/k/a "Gutta,"         :

                                              :

                   Defendants.         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

 

**THE GOVERNMENT'S RESPONSE IN OPPOSITION
TO THE DEFENDANT'S MOTIONS *IN LIMINE***

 

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

 

Jessica Fender
Anden Chow
Jacqueline Kelly
Assistant United States Attorneys
    *– Of Counsel –*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 1

I. The Co-Conspirator Statements Are Admissible ................................................. 1

II. The Chafla and Suazo Murders Are Direct Evidence of the Racketeering Conspiracy and Should Be Admitted Against All Trial Defendants ................................................... 4

III. The Court Should Admit Certain of Owen and Ventura's Prior Bad Acts.......................... 6

    A. The Government Has Already Identified Which Acts of Violence It Will Prove at Trial with Sufficient Particularity .................................................................................. 6

    B. Owen's Prior Firearms Arrests with Rollin' 30s Members Are Direct Evidence and Admissible under Rule 404(b) ............................................................................. 7

        1. The July 25, 2015 Arrest ........................................................................ 7

        2. The November 9, 2008 Arrest ................................................................. 9

        3. The July 3, 2015 Arrest.......................................................................... 9

    C. Ventura's 2009 State Conviction Is Direct Evidence....................................... 10

IV. Ventura's Stabbing Is Direct Evidence of the Racketeering Conspiracy ........................... 11

V. Victim-1's Recorded Phone Call Should Be Admitted Under Rule 801(d)(2)(E) .............. 12

VI. Ventura's Additional Motions are Moot ......................................................... 14

CONCLUSION...................................................................................................... 15

## PRELIMINARY STATEMENT

The Government respectfully submits the memorandum of law in opposition to the defendants' motions *in limine*. (*See* Dkt. Nos. 394 (Randy Torres), 396 (Walston Owen), 310, 393, 405 (Charles Ventura); Ventura 8/15/2019 Ltr. (filed under seal); Ventura 12/23/2019 Ltr. (filed under seal)). In their motions, the defendants move to preclude (i) the admission of any co-conspirator statements not "immediately" identified by the Government to the defense, as well as statements that will be offered "through social media"; (ii) evidence of the Chafla and Suazo homicides; (iii) evidence relating to certain of Owen and Ventura's prior arrests, convictions, periods of incarceration, and/or parole status; (iv) evidence of stabbing injuries suffered by Ventura; (v) evidence relating to a call placed by the individual whom Ventura accidentally shot on September 6, 2017 ("Victim-1")[1]; and (vi) testimony from individuals whom identified Charles Ventura as the individual who appeared on video fleeing the scene of that shooting.  For the reasons set forth below, the defendants' motions should be denied in their entirety.

## ARGUMENT

### I.  The Co-Conspirator Statements Are Admissible

In defendant Randy Torres' motion (*see* Dkt. No. 394), Torres asks that the Court preclude admission of co-conspirator statements at trial if the Government does not "immediately" identify all of those statements; Torres likewise seeks "immediate" identification of statements the Government intends to offer from social media platforms.  The motion should be denied for at least two independent reasons.

---

[1]     For ease of reference and consistency, the Government will continue to use the same designations (e.g., "Victim-1," "CW-2") to refer to the same individuals as in the Government's motions *in limine*.

1

*First*, this motion has no basis in the law; it is simply another attempt to gain a trial advantage and obtain early disclosures to which the defense is not entitled. Indeed, the defense cites no law to support its request for relief, and instead argues that the request falls within the Court's general discretion as to the conduct of the trial. As the Court is aware, however, the parties have worked on many fronts to agree to a schedule that will avoid any unnecessary delays at trial, and this is no different. The Government has every intention of producing its exhibits, including those drawn from social media, sufficiently in advance of trial to enable the defense to object to those exhibits, should they believe they have a valid basis to do so. But to require the Government at this point to identify every single specific co-conspirator statement about which a cooperating witness might testify, over the course of a conspiracy that spanned eight years, is not just impracticable—it is impossible. The same is true with respect to the social media exhibits. The Government is still working to determine which materials it will introduce at trial, and thus even if it wished to do so, it is not in a position to produce the exhibits at this time.

The defense complains that if the requested materials are not produced immediately, it will not have time to locate "all potential impeachment material" (*see id.* at 2). This argument misses the mark. In the first instance, the Government, recognizing the voluminous nature of the social media materials, produced those materials (including Section 3500 material for cooperating witnesses and victims) well in advance of the previously scheduled trial date; after that, the defense nonetheless requested and received a *significant* adjournment, over the Government's objections. Thus, the defense has had about five months, working with their litigation support specialist, to identify any and all possible impeachment material they may wish to use at the trial, regardless of the Government's specific exhibits. Moreover, while the defense's desire to have full access to

the Government's trial strategy, exhibits and the like is understandable, that desire does not create an obligation on the part of the Government to provide those materials.

*Second*, the Government has every confidence that the statements it seeks to introduce *are* admissible under Rule 801(d)(2)(E). As the Government laid out in detail in its own motions *in limine*, the Government expects that at trial various cooperating witnesses will testify about statements made by members of the racketeering conspiracy, including the Trial Defendants, while the cooperating witnesses themselves were members of the conspiracy. In that motion, the Government also identified for the Court the relevant categories of co-conspirator statements it would seek to admit under Rule 801(d)(2)(E): (a) statements made by members or associates of the Rollin' 30s in the lead up to acts committed as part of the Enterprise, or while those acts were being committed; (b) statements made by members or associates of the Rollin' 30s about acts committed as part of the Enterprise, where the statements were made during the conspiracy, but after the acts in question had occurred; and (c) statements made by members or associates of the Rollin' 30s about the status of other members of the racketeering conspiracy and/or Opposing Crews, statements about the history and practices of the Rollin' 30s, and its leadership structure. The Government provided a number of detailed and illustrative examples of the types of statements it believes fall into each of these categories. Thus, the Court will be well equipped to evaluate those statements and to provide guidance to the parties in advance of trial, which will allow the Government to take into account the Court's rulings in eliciting testimony from the cooperating witnesses.

*Finally*, to the extent that the defense suggests that statements against penal interest are only admissible against the declarant, and not a co-conspirator, unless the statements are also in furtherance of the conspiracy, the defense cites no law in support of that reasoning. Nor, to the

Government's knowledge, is there support in the law for such a novel proposition. To the contrary, statements against penal interest are routinely admitted against a non-declarant co-conspirator, even where the statements are not "co-conspirator statements" under Rule 801(d)(2)(E).  *See, e.g.*, *United States v. Winley*, 638 F.2d 560, 561 (2d Cir. 1981) ("A co-conspirator's admission of guilt, made after termination of the conspiracy, is not admissible as a statement in furtherance of the conspiracy, but here the admissions were received in evidence as declarations against penal interest."); *United States v. Lieberman*, 637 F.2d 95, 103 (2d Cir. 1980) ("We conclude, however, that the statements were admissible against Lieberman under an exception to the hearsay rule, as statements against Gaines's penal interest.").

For all of these reasons, as well as those set forth in the Government's motions *in limine*, the Court should deny Torres' motions *in limine*.

## II.  The Chafla and Suazo Murders Are Direct Evidence of the Racketeering Conspiracy and Should Be Admitted Against All Trial Defendants

For the reasons set forth in the Government's motions *in limine*, evidence of the murders of Victor Chafla and Nestor Suazo is admissible against each of the Trial Defendants, all of whom have been charged with participating in a racketeering conspiracy in which murder was one of the conspiracy's objects.  To prove that crime, the Government must show, among other things, that each of the Trial Defendants agreed that a co-conspirator would commit two or more racketeering acts.  That co-conspirators did in fact commit those racketeering acts—including the murders of Victor Chafla and Nestor Suazo—is thus directly relevant to prove the charged conspiracy.

Owen has moved to preclude the admission of evidence pertaining to both murders.  Owen objects to the evidence of the murder of Chafla based on the claim that the Government has failed to allege any facts tying him to the events that resulted in Chafla's death.  Not only is the argument

4

premised on an incorrect assertion, but it is legally irrelevant.  As asserted in the Government's motion *in limine*, earlier on the day of Chafla's murder, Owen called Richard Feliz, a/k/a "Dirt," to inform him that rival gang members from nearby Morrison Avenue had come on Rollin' 30s turf.  When Feliz went to Morrison Avenue to retaliate, he carried a gun that Owen had previously supplied for the Enterprise's use—the gun that ultimately resulted in Chafla's death.  If proven, these facts show Owen's direct involvement in the murder of Chafla and are therefore admissible.

However, even if Owen's conduct did not tie him to the Chafla murder directly, evidence of the Chafla homicide would still be admissible, because it still constitutes direct proof of Owen's agreement to participate in a conspiracy whose racketeering acts included murder.  As the Second Circuit has made clear, "the government must prove an enterprise and a pattern of racketeering activity as elements of a RICO violation. 18 U.S.C. § 1962(c).  Proof of these elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts.  Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant." *United States v. DiNome*, 954 F.2d 839, 843 (2d Cir. 1992).  "Even the introduction of evidence of murders committed by RICO co-conspirators does not create substantial spillover prejudice for a defendant not charged with those murders." *United States v. Cortesiano*, 2012 WL 1450401, at *4 (E.D.N.Y. Apr. 26, 2012).

Owen's objection to the evidence of the murder of Suazo is equally meritless.  The Government has asserted that Suazo's homicide was the result of a dispute between two sets of the Rollin' 30s Crips—the Harlem Mafia Crips to which Owen belonged, and the Certified Harlem Crips to which Suazo belonged.  Thus, evidence of the Suazo homicide, as alleged, is direct proof of one of the elements the Government is required to prove to sustain its burden.  While a jury

5

ultimately may find that the evidence presented by the Government does not establish beyond a reasonable doubt that the murder fell into the scope of the racketeering conspiracy and was instead, as Owen characterizes it, "outside of gang activities," this possibility simply underscores that the question is ultimately a question of fact for the jury, which does not bear on admissibility of the evidence itself.

## III.   The Court Should Admit Certain of Owen and Ventura's Prior Bad Acts

Walston Owen and Charles Ventura each move to preclude the introduction of evidence of certain prior bad acts.  For the reasons stated below, these motions should be denied in their entirety.

### A.   The Government Has Already Identified Which Acts of Violence It Will Prove at Trial with Sufficient Particularity

There is no basis for Owen's request that the Government be required to provide, "within thirty days of the beginning of trial, exactly which alleged acts of violence it is seeking to introduce." (*See* Dkt. No. 396 at 2.)  On or about September 28, 2018, June 4, 2019, and August 15, 2019, the Government delivered Enterprise Letters to the Trial Defendants, listing various racketeering acts the Government intended to prove at trial along with the approximate dates of each event's occurrence.   Further, on January 3, 2020, the Government provided notice of additional evidence the Government may seek to offer as direct evidence of the relationship between the Trial Defendants and the members of the Enterprise; that evidence is also admissible pursuant to Rule 404(b) as evidence of intent, plan, association, knowledge, identity, modus operandi, and lack of mistake or accident.  The Trial Defendants have ample notice of the particular incidents the Government may seek to prove at trial.  Owen cites no legal authority supporting the

proposition that he is entitled to an outline of the Government's entire case-in-chief a month before trial and, therefore, his request should be denied.

### B.  Owen's Prior Firearms Arrests with Rollin' 30s Members Are Direct Evidence and Admissible under Rule 404(b)

As stated above, on or about January 3, 2020, the Government provided notice that it might seek to introduce evidence of two incidents that resulted in Owen's arrest for firearms possession. Owen moves to preclude such evidence seemingly based on the argument that the weapons possession did not facilitate Owen's participation in the Rollin' 30s.  Owen's argument fails, as such evidence is admissible as direct evidence of the relationship between Owen and other members of the Enterprise, as well as pursuant to Rule 404(b) as evidence of intent, plan, association, knowledge, identity, modus operandi, and lack of mistake or accident.[2]

#### 1.  The July 25, 2015 Arrest

Owen first moves to preclude admission of evidence pertaining to an incident on or about July 24, 2015, when Owen was arrested with another person ("CC-1") inside of 1255 Stratford Avenue in the Bronx, New York.  Two loaded firearms were recovered.  The Government anticipates that testimony of cooperating witnesses at trial will establish that Owen lived at 1255 Stratford Avenue and his home was in territory controlled by the Rollin' 30s.  The testimony will further establish that Owen consistently possessed multiple firearms that he kept at his home and provided to fellow Rollin' 30s members for use in gang-related violence.  Accordingly, evidence that Owen was found with two loaded firearms (1) on a date right in the middle of 2015, at a time when Rollin' 30s related violence was significantly elevated, and (2) at Owen's home, right in the

---

[2]     The Government has set forth a recitation of the applicable law pertaining to intrinsic or direct evidence as well as Federal Rule of Evidence 404(b) in its motion in limine and incorporates it by reference here. *See* Gov't Mot. 34-36.

heart of Rollin' 30s territory, is direct proof of Owen's participation in the charged racketeering conspiracy.  Even if it was not direct proof, evidence of the July 24, 2015 incident should still be admitted pursuant to Rule 404(b) for non-propensity purposes, including to establish Owen's access, intent, plan, knowledge, and lack of mistake or accident with regard to firearms possession.

In his opposition brief (Dkt. No. 417 at 4), Owen cites a single case, *United States v. Nelson*, 103 F. Supp.2d 512, 513-14 (N.D.N.Y 1999), purporting to hold that the introduction of gang affiliation evidence is not permitted.  Respectfully, the defense completely misreads the case.  The defendant in *Nelson* was charged with a single count of with being a felon in possession of a firearm, not racketeering offenses. *Id.* at. 512. Of course, in that circumstance where there are no racketeering charges, a court might be wary of permitting evidence of the defendant's gang affiliation.  Yet, even in that case, the district court in *Nelson* recognized that some of the gang evidence "appear[ed] likely to have substantial probative value" and *reserved judgment* on the defendant's request to preclude introduction of the evidence.  *Id.* at 514.  In the instant case, by contrast, where Owen has been charged with racketeering conspiracy and his agreement with others to participate in the Enterprise, including by participating in numerous shootings, is a core element of the criminal charge, evidence of his access to and possession of firearms is relevant and highly probative.[3]

---

[3]     In a footnote, Owen argues that if this evidence is admitted, he should be permitted to introduce evidence that the case was dismissed.  The fact that the arrest was subsequently dismissed is irrelevant to the inquiry of whether the events took place as testified to by the witness.  Any number of factors may lead to a decision to dismiss an arrest and many of which have nothing to do with the facts as perceived by the witness.  To allow inquiry into the ultimate disposition of the case is to create a trial within a trial and would create jury confusion.  *See United States v. Rodriguez*, 582 F. Supp. 2d 486, 487 (S.D.N.Y. 2008) (VM) (granting Government motion *in limine* to preclude the defendants from introducing evidence about or otherwise eliciting or referring to the dismissals of defendants' prior arrests).

### 2.   The November 9, 2008 Arrest

Owen next moves to preclude admission of evidence pertaining to his November 9, 2008 arrest, along with two Rollin' 30s members and a fourth individual in the vicinity of East 179th Street and Prospect Avenue in the Bronx, New York.  Law enforcement testimony will establish that Owen was stopped driving a vehicle from which two loaded firearms were recovered.  One of the firearms was recovered from beneath the driver's seat.  Cooperating witness testimony will identify two of the other people in the car as Rollin' 30s members.  The incident precedes the charged time frame set forth in the indictment by a mere two months; there can be no serious question that the evidence is nonetheless probative of Owen's association with members of the Rollin' 30s and the mutual trust that existed between them with regard to possession of firearms. Further, the evidence is also admissible pursuant to Rule 404(B) for non-propensity purposes, including to establish Owen's association with the two other Rollin' 30s members,[4] as well as his access, intent, plan, knowledge, and lack of mistake or accident with regard to firearms possession.

### 3.   The July 3, 2015 Arrest

Finally, Owen moves to preclude admission of evidence pertaining to an incident on or about July 3, 2015, during which Owen was arrested inside a vehicle with various members of the Rollin' 30s, including Richard Feliz, a/k/a "Dirt," and Jaylen Scott-King, a/k/a "Flirm," while members of the group were in possession of, among other things, a quantity of narcotics and a

---

[4]      In late 2014, one of these individuals, Christopher Solomon, a/k/a "Solo," shot and killed a man named Arius Montanus, a/k/a "A-Billy." Montanus was a member of an Opposing Crew centered on Morrison Avenue—a crew that included Aluko Roberts, the person whom Richard Feliz and another member of the Rollin' 30s later tried to murder, resulting in the death of innocent bystander Victor Chafla.  Prior to his death, Montanus also had been closely affiliated with the Bronx River Bloods.  The Government thus anticipates that this incident, which significantly ratcheted up tensions between the Rollin' 30s, the Morrison Avenue Crew, and the Bronx River Bloods, will be referenced in the course of the trial.

gravity knife.  In its notice, dated January 3, 2020, the Government advised defense counsel that it did not intend to seek to introduce any evidence pertaining to this arrest in its case in chief. Instead, the Government advised that it may seek to introduce the evidence of this incident (and others) only to the extent that the defense opened the door to such testimony, whether through cross-examination of the Government's witnesses or through direct testimony of the defendants. For example, should Owen, through cross-examination or direct testimony seek to challenge the notion that he associated with Feliz or Scott-King or ever engaged in any joint activities, the Government would seek to admit evidence of the incident for the non-propensity purpose of disproving that assertion and establishing that Owen did, in fact, associate with Feliz and Scott-King and had, in the past, engaged in joint activities.  For this reason, the defense's request as to this particular point should be denied as moot.

### C.   Ventura's 2009 State Conviction Is Direct Evidence

Ventura moves to preclude the introduction of evidence concerning his 2009 state criminal possession of a weapon conviction (the "2009 Conviction"), arguing that it is improper evidence under Federal Rule of Evidence 404(b).  Because the conviction and underlying conduct constitute direct proof of Ventura's participation in the charged racketeering conspiracy, Rule 404(b) is inapplicable and this motion should be denied.

The Indictment charges Ventura in Count One with participating in a racketeering conspiracy as a member of the Rollin' 30s from in or about 2009 to in or about 2016.  The Government plans to introduce evidence of the 2009 Conviction, arising out of an April 2009 shooting Ventura committed in the vicinity of the Bronx River Houses in the Bronx, New York. Ventura was arrested on or about April 23, 2009 and subsequently pled guilty in Bronx County Court, where he was sentenced to three and a half years' imprisonment.

Ventura argues that his conviction is "unrelated to the charges in the indictment." (Ventura's August 6, 2019 Ltr. 3.)  This argument is completely without merit.  Ventura committed the shooting underlying his 2009 Conviction against rival gang members from the Bronx River Houses.  At trial, multiple cooperating witnesses are expected to testify regarding the long-running rivalry between Bronx River and the Rollin' 30s gang members.   In addition, one of those cooperating witness ("CW-1") is expected to testify, in sum and substance, he was with Ventura prior to the shooting, saw Ventura with the gun he used during the shooting, and that Ventura told him that he was going to Bronx River – which CW-1 understood meant to commit a shooting – and left on an electric scooter.[5]  This testimony clearly establishes that the shooting was committed by Ventura as part of his participation in the Rollin' 30s enterprise.   The evidence is therefore admissible as direct evidence.  *See, e.g.*, *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000); *see also* Weinstein's Fed. Evid., § 404.20[2][b] (noting that evidence of other wrongs is admissible without regard to Rule 404(b) where those wrongs "were necessary preliminaries to the crime charged").

## IV.  Ventura's Stabbing Is Direct Evidence of the Racketeering Conspiracy

Ventura also moves to preclude evidence of Ventura being stabbed on August 11, 2014, arguing that the stabbing is not relevant and is prejudicial to Ventura.  This motion should also be denied.

The evidence at trial will show that Ventura was attacked and stabbed while he was with other Rollin' 30s members in the vicinity of a liquor store near the Sotomayor Houses, formerly

---

[5] A law enforcement officer who participated in the arrest ("Officer-1") is also expected to testify that he observed the shooting and saw the shooter depart on a small, mechanized scooter-bike.

known as the Bronxdale Houses, in the Bronx.  That attack precipitated a retaliatory shooting by Owen, who went to retaliate with other gang members.

CW-1 is expected to testify, in sum and substance, that he observed Ventura after the stabbing with Owen and that Owen recruited CW-1 to go with him and others to Bronxdale Houses to retaliate.  CW-3 is also expected to testify about the incident.  In sum and substance, CW-3 is expected to testify that he was with Ventura and other gang members at the time of the stabbing, that he and others informed Owen about the attack, and that Owen then obtained a firearm and went to the vicinity of the stabbing to retaliate.

Taken together, the evidence at trial regarding the stabbing is powerful evidence of Ventura's (and Owen's) participation in the charged racketeering conspiracy.  Indeed, Ventura's only argument for preclusion is that admission of the evidence would suggest that Ventura was involved in "gang" activities.  Those gang activities, however, were those of the charged Rollin' 30s enterprise.  The evidence is therefore not unrelated propensity evidence, but rather direct evidence of Count One and is thus admissible.

## V.  Victim-1's Recorded Phone Call Should Be Admitted Under Rule 801(d)(2)(E)

Ventura moves to preclude the admission of statements made during a recorded call by Victim-1, who was shot on or about September 6, 2017.  The Government's motion *in limine* addressed the admissibility of Victim-1's recorded phone call in detail.  The Government therefore only briefly responds to the specific arguments raised in Ventura's December 23, 2019 Supplemental Motion.

Ventura argues that the call contains statements that are "hearsay, lack a credible foundation, and are extremely prejudicial."  (Ventura's Dec. 23, 2019 Supp. Mot. at 2.)  These arguments fail.  As detailed in the Government's Moving Brief, Vicitm-1's statements about the

shooting constitute co-conspirator statements as well as statements against penal interest, and are thus admissible.

The evidence at trial will also provide a clear factual foundation for the statements made during the call about the shooting by Ventura.  The Government expects to introduce evidence authenticating the call from Victim-1 by stipulation and/or testimony.  Moreover, the call itself provides the factual foundation for its admission.[6]  During the call, Victim-1 – who was incarcerated at the time – asks the call recipient to confirm his Crip membership.  Victim-1 then demonstrates his familiarity with the Crips street gang, its rules, and its various sets or "line-ups," and the shared rivals of two New York-based line-ups.  Victim-1 claims his membership as a member of the "Silent Murder Crips" or "SMC."  Victim-1 then recounts that he was inadvertently shot by friendly fire from "Charlie" from "Stratford" when he was in enemy territory – namely, the Bronx River Houses, home base to members of the rival Bloods street gang.  During that portion of the call, Victim-1 demonstrates his intimate knowledge of a shared beef SMC and the Rollin' 30s line-up from Stratford had with Bronx River. Victim-1 notes that "Charlie" mistook him for "Don," a reference to rival gang member Jadon Robinson.

Further context for this call will be provided through testimony from a cooperating witness ("CW-3") who is expected to testify about the relationship between the Rollin' 30s and SMC, as well as the long-running rivalry with Jadon Robinson, a/k/a "Don."  In sum, there is a strong factual basis for the admission of the statements about the shooting.

Finally, as to Ventura's argument that the call is prejudicial, the probative value of the call – providing a detailed explanation of a shooting by one of the Trial Defendants for purposes of

---

[6] The call in its entirety was attached as an exhibit to the Government's motion *in limine*.

13

advising another Crip gang member of the status of the gang's activities – far outweighs any possible prejudice.  Far from speculation, Victim-1's statements are indicative of someone who is "in the know" – both as to the rivalry with Bronx River underlying the shooting, and the specific circumstances of the shooting itself.  For these reasons, and those set forth in the Government's motion *in limine*, the call is admissible.

## VI.  Ventura's Additional Motions are Moot

Ventura moves to preclude law enforcement testimony, including testimony from Ventura's parole officer, identifying Ventura on certain surveillance video evidence.  Because the Government does not seek to introduce such evidence, this motion is moot.

Relatedly, Ventura also moves to preclude evidence that Ventura was on parole in September of 2017, at the time of the shooting of Victim-1.  Because the parties have reached a stipulation regarding the relevant evidence, this motion is also moot.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the defendants' motions *in limine* in their

entirety.


Dated:  New York, New York
        January 10, 2020

                            Respectfully submitted,

                            GEOFFREY S. BERMAN
                            United States Attorney


                    By:     _____/s/_____
                            Jessica Fender
                            Anden Chow
                            Jacqueline Kelly
                            Assistant United States Attorneys
                            (212) 637-2276 / 2348 / 2456

15