K1AATORCps

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                                    16-cr-809 (VM)

RANDY TORRES,
WALSTON OWEN, and
CHARLES VENTURA,

              Defendants.                     Conference

------------------------------x

                                    New York, N.Y.
                                    January 10, 2020
                                    9:25 a.m.

Before:

                        HON. VICTOR MARRERO

                                    District Judge

                        APPEARANCES

GEOFFREY S. BERMAN
       United States Attorney for the
       Southern District of New York
BY:   JESSICA FENDER, ESQ.
       Assistant United States Attorney

LAW OFFICE OF SAM A. SCHMIDT
       Attorneys for Defendant Torres
BY:   SAM A. SCHMIDT, ESQ.

DONALDSON CHILLIEST & McDANIEL LLP
       Attorneys for Defendant Owen
BY:   XAVIER R. DONALDSON, ESQ.
       -and-
LAW OFFICE OF ALAIN V. MASSENA
       Attorneys for Defendant Owen
BY:   ALAIN V. MASSENA, ESQ.

K1AATORCps

| | |
|---|---|
| 1 | THE COURT:  This is a proceeding in the matter of |
| 2 | United States v. Torres and others, docket no. 16-cr-0809. |
| 3 | Counsel, please enter your appearances for the record. |
| 4 | MS. FENDER:  Good morning, your Honor.  Jessica Fender |
| 5 | on behalf of the government. |
| 6 | MR. DONALDSON:  Your Honor, for Mr. Owen, Xavier R. |
| 7 | Donaldson.  Good morning. |
| 8 | MR. MASSENA:  Alain Massena, also for Mr. Owen.  Good |
| 9 | morning, your Honor. |
| 10 | MR. SCHMIDT:  Good morning, your Honor.  Sam Schmidt |
| 11 | for Randy Torres.  I waive Mr. Torres' presence for today. |
| 12 | This is a matter dealing with Mr. Owen and not Mr. Torres. |
| 13 | THE COURT:  Thank you. |
| 14 | The Court scheduled this conference following receipt |
| 15 | of a letter from Mr. Owen's counsel dated January 7, 2020 |
| 16 | bringing to the Court's attention the potential conflict that |
| 17 | counsel may have relating to his representation of another |
| 18 | defendant in a matter that potentially may raise some issues |
| 19 | concerning Mr. Donaldson's representation of Mr. Owen in this |
| 20 | proceeding. |
| 21 | Let me first ask the government whether the government |
| 22 | has received and reviewed the copy, or a copy of |
| 23 | Mr. Donaldson's letter? |
| 24 | MS. FENDER:  We have, your Honor.  We had spoken with |
| 25 | Mr. Donaldson about this issue prior to his sending the letter. |

K1AATORCps

1          THE COURT:  Mr. Donaldson, did you wish to address the

2     questions that you raise and indicate whether you believe there

3     is a conflict that needs to be resolved?

4          MR. DONALDSON:  Judge, yes.  I will try to follow some

5     type of procedure here, but I wanted to bring it to the Court's

6     attention, because I think that there may be some issues that

7     need to be resolved and I wanted to make sure we did it early

8     enough to get it done prior to the beginning of trial.

9          I will start with context.  I did represent a

10     potential witness of the government back in, I think beginning

11     of 2007 and 2008.  He was arrested on a, I think, unrelated, I

12     think the government thinks as well, unrelated state firearm

13     charge in Bronx County.  I represented that young man from

14     inception to the disposition of his case, resulting in his

15     conviction for that firearm.

16          His name was brought to my attention sometime last

17     year by the government.  I will be honest; initially I didn't

18     recognize the name.  It sounded familiar to me.  I then thought

19     about it, I think maybe a week or so.  I did some research into

20     it and I realized, yes, I know this young man.  I informed the

21     government of that situation.

22          We discussed at that point, I think rather thoroughly,

23     we vetted it out rather thoroughly.  I spoke to Mr. Owen about

24     it as soon as I found out about it a couple months ago.  We did

25     not think that there was an issue.  Mr. Owen didn't have an

K1AATORCps

issue with it, with my representation of that former client and

my continued representation of him.

However, after reviewing some of the materials

subsequently provided by the government and reviewing some

other materials provided by the government and in preparation

for trial, it's my belief that there might be the smallest

possibility that I may have to cross-examine this person if he

is called as a witness.  If that would be the case, it's my

opinion that I think Mr. Owen at least needs to be aware that I

did in fact represent this person and now I may have to

cross-examine that person.  I think Mr. Owen needs to

understand that that possibility may occur if he testifies.

But another possibility comes up is that if someone

else testifies about what this potential witness told them, and

even if the witness doesn't testify, for example, if a

potential witness does not testify but the government puts on a

witness that testifies as to what my former client said as a

co-conspirator statement, then I would have to cross-examine

that witness based upon what my former client says, and I think

the law allows me to cross-examine on that person's credibility

that he told him whatever he told him.

So either way, it may be a situation where I'll be

cross-examining somebody related to what my former client may

have said, to at least give the jury some idea about my former

client's credibility.

K1AATORCps

1      So I think because of those possibilities, I think

2  they're rather small, based on my conversations with the

3  government, but I have to prepare for even the smallest

4  possibility, and so I felt it appropriate to bring this to the

5  Court's attention.

6      I don't believe that my client has an issue with me

7  doing that.  But I think he needs to be aware of the fact that

8  that may happen, that I may be required to cross-examine a

9  former client, and whether he is in fact comfortable with me

10  doing that.

11      THE COURT:  Thank you.

12      Ms. Fender.

13      MS. FENDER:  Yes, your Honor.  Everything that

14  Mr. Donaldson has said is exactly right, including the fact

15  that we agreed that there's no conflict here to resolve, but we

16  think that Mr. Donaldson is appropriately taking a very

17  cautious view and wanting to place this on the record, which we

18  agree with.

19      So just to clarify a few things, your Honor, we did

20  address this issue when Mr. Donaldson brought it to our

21  attention in, I think that was August of 2019.  At that time I

22  actually reached out to and also spoke with the counsel who

23  currently represents the former client, to make sure I fully

24  understood from that perspective as well what my potential

25  conflict might be.  We are, I think, confident, under -- the

K1AATORCps

1   governing rule here, your Honor, is Rule 1.9, and under both

2   the model ABA code and the New York State application of that,

3   there is no conflict here that we see.  Specifically, there is

4   only a conflict where there is representation of a former

5   client where there's a same or substantially related matter in

6   which the former client's interests are materially adverse.

7   And having spoken with Mr. Donaldson at some length and spoken

8   with the current counsel for the former client, we have no

9   understanding that there is a same or substantially related

10  matter here.  Mr. Donaldson's representation in 2008 was

11  something that, by everyone's current knowledge, is completely

12  different, and hasn't given Mr. Donaldson's any inside

13  information that would make it inappropriate here for him to

14  continue with his representation of Mr. Owen.

15          So we are confident that there is no conflict, but we

16  agree that it's prudent for us to make sure that this is all on

17  the record, that the steps that have been undertaken are

18  clearly fleshed out, and that Mr. Owen is apprised of the

19  potential, however slight -- and we agree that it's quite

20  slight -- that the former client would testify at this trial.

21          THE COURT:  In light of these representations, let me

22  ask Mr. Owen to please rise.

23          Please rise.

24          Mr. Owen, your counsel, Mr. Donaldson, has brought to

25  the Court's attention and to the government's that he at one

K1AATORCps

1    point represented a client in, he says, a matter dating back to

2    2007, and that there is some possibility -- the government says

3    it may be remote -- that that former client of Mr. Donaldson

4    may be called to testify in this proceeding involving charges

5    against you, and that, if that occurs, Mr. Donaldson may feel

6    it necessary to cross-examine that former client.  In those

7    situations where an attorney is representing a former client,

8    there's always the prospect, sometimes very -- most of the

9    times very remote -- that the cross-examination may not be as

10   forceful and vigorous as representing a witness who has not

11   been a client.

12          However, under the rules, which the government has

13   just indicated, the ethical rules that apply, the issue arises

14   when there is some relationship between the matters that

15   counsel represented a former client in prior and those that are

16   involved in the present proceedings.  The government has

17   indicated, and I concur, that there is no clear connection

18   between Mr. Donaldson's representation of that former client in

19   2007 and the matters that are up for trial in your case.

20          So, for these reasons, Mr. Donaldson and the

21   government wish to record that this matter was brought to the

22   Court's attention and that you are aware of it and that you do

23   not have any objection to Mr. Donaldson's continuing to

24   represent you in this matter, even if he may be called upon to

25   cross-examine this former client relating to the charges

K1AATORCps

1     against you.

2               Do you understand all of what I just said?

3               THE DEFENDANT:  Yes.

4               THE COURT:  And with that understanding, do you have

5     any objection to Mr. Donaldson continuing to represent you in

6     this matter?

7               THE DEFENDANT:  No.

8               THE COURT:  All right.  Thank you.

9               Ms. Fender, is there anything else?

10              MS. FENDER:  Not from the government, your Honor.

11              THE COURT:  Mr. Donaldson?

12              MR. DONALDSON:  Yes.  There is just one other

13    scheduling issue I wanted to speak to the Court about.  We have

14    a trial scheduled for February 3rd, 2020.  That date was set, I

15    believe, via telephone conference some time ago, I believe in

16    December or November.  I've forgotten what day it was.  I was

17    not actually on that phone conference.  I told the government

18    and co-counsel that February 3rd was not a great day for me,

19    that I would be asking that we start February 4th.  Why?

20    Because my schedule -- I'm not here February 3rd.  I can change

21    it, I think, but I told the government and co-counsel that I

22    would probably ask the Court for February 4th if I couldn't

23    change it for February 3rd.  I've been trying, but it's been

24    difficult.

25              I told the government yesterday that I would be asking

K1AATORCps

1  the Court, if the Court were inclined to allow us to start

2  February 4th in the morning rather than February 3rd in the

3  morning, told the government I would make an application this

4  morning.  I believe the government said they would be objecting

5  to it, for -- for odd reasons.  But they'll put that on, if

6  they want to put that on the record.

7         I don't know how much of a difference it will make,

8  but that would be my request and I'm making that request now,

9  that we start February 4th rather than February 3rd.  I've

10  spoken to my colleagues.  They are fine with it.  I think the

11  government is, as of last night -- may not be fine with it.

12         THE COURT:  All right.  Thank you.

13         Ms. Fender, do you want to address that request?

14         MS. FENDER:  Just very briefly, your Honor.  As I told

15  Mr. Donaldson, we certainly appreciate that he has travel plans

16  and we want to be mindful of that.  The issue for us is just,

17  as your Honor knows, this trial has the potential to be quite

18  massive.  We've been working very hard it with defense counsel

19  and I'm happy to report that we've made significant progress on

20  a number of stipulations.  But there are a few that, as we

21  highlighted early on for the defense, address a number of

22  witnesses that are very, in our view, ministerial, things like

23  video collection, ballistics collection, when there are still

24  going to be witnesses at the trial that are the crime-scene or

25  evidence-collection folks that they can cross-examine.  It's

K1AATORCps

```
 1   just a huge number of witnesses.  And we haven't come to an
 2   agreement yet on those stips.  And so as a result we're
 3   concerned about how long the trial is going to take.  And we
 4   know that we represented to your Honor repeatedly at this point
 5   that we're expecting about a three-week trial.  We don't know
 6   what your Honor's schedule is thereafter.  So we are trying to
 7   keep things moving and as tight as possible.
 8        So at this point, because we haven't managed to reach
 9   agreement on those sort of high-volume, high-witness-number
10   stipulations, we don't feel comfortable giving up an entire
11   trial day.
12        What I would suggest to your Honor, if you're inclined
13   to grant this brief adjournment, is, we're continuing to work
14   in good faith on this.  They're continuing to work in good
15   faith on this.  And I'm hoping that over the next week or so,
16   we can make good progress and then be in a position where we
17   can just not object.
18        MR. DONALDSON:  I'll just say one thing to that, and,
19   again, I know it's my request because of a trip that I had
20   taken care of about nine, ten months ago, but I will say that
21   the government has provided us stipulations.  We have executed
22   about nine, eight or nine of them, of the 12 that they're
23   asking for, or 13 they're asking for.  So that would be roughly
24   about 75 percent, something like that, that we've agreed to.
25   And we said that we would be inclined to make a few more.  So,
```

K1AATORCps

respectfully, to the extent that I respect her here, but I
don't want to feel like I'm in a position, being put in a
position that, if you sign these, then we'll say yes, which is
what it feels like, because then that would maybe make me say
I'm not signing anything just to do that.  But we're not going
to play those kind of games.

        So I am saying, and then I'll sit down, that we have,
I think, like I always am, trying to expedite, move efficiently
and do things the right way.  We have been signing these
stipulations, have been working them out.  And I hope to
continue doing that.  That's not going to happen.  I get it.
It's an adversarial proceeding, process, and we're going to be
adversaries.  I don't mind that.  We'll be friends after that.
But just so the record is clear, we have been working, at least
I have, and I think Mr. Schmidt has as well, in good faith to
get those stipulations done, with the understanding we're
trying to agree to things that are agreeable and things that we
disagree with we could disagree with, because we're disagreeing
for the right reasons.

        So I'll leave it at that.  I'll leave the Court to
decide whether to move it to February 4th.  If the Court does
not make arrangements, it won't be the end of the world.  If
the Court does, thank you very much.

        THE COURT:  Mrs. Fender.

        MS. FENDER:  Very brief, your Honor.  I agree with

K1AATORCps

1    everything Mr. Donaldson says about working in good faith.

2    There's no doubt about that here.  My particular point is that

3    we highlighted and have highlighted, quite early on, that there

4    are a number -- that these last three or four stipulations that

5    we're talking about here are the ones that have a significant

6    volume of witnesses.  We simply want your Honor to know that

7    we're all doing our best.  We're not trying to hold anyone's

8    feet over the fire here, but given that we have said three

9    weeks, three weeks, three weeks, we're concerned that if we

10   don't make progress on these other stipulations, we may go

11   over.

12           So frankly, your Honor, depending on your schedule and

13   other considerations for the Court, maybe that's not an issue,

14   and so fine.  But we just want to be sure that we're being

15   clear to manage expectations here.

16           MR. SCHMIDT:  Judge, may I add one thing?

17           THE COURT:  Yes, Mr. Schmidt.

18           MR. SCHMIDT:  One of the stipulations involved the

19   Facebook accounts.  The reason we can't enter into that

20   stipulation yet is because of the protective order that does

21   not allow us to discuss with our client whose Facebook accounts

22   they are.  So that decision, of entering into that

23   stipulation -- the stipulation involving the Facebook

24   accounts -- has to await until the date that we're allowed to

25   talk to our clients about whose Facebook accounts they are.

K1AATORCps

1        So that one would likely be resolved but is being

2   delayed because of the circumstances of the protective order.

3   So I want your Honor to be clear on that one, which I think the

4   government thinks is one of the more difficult ones.

5        MS. FENDER:  Your Honor, I certainly don't want to

6   pull you into the back-and-forth on this and so I'll cut it off

7   after this, but that's actually not one of the issues and

8   actually we understood we had reached an agreement.  And the

9   objection to showing the clients because they think it's

10  covered by the protective order, that's the first I'm hearing

11  of that objection.  The stipulation that Mr. Schmidt is talking

12  about actually lists every single Facebook account we got for

13  anybody related to the case, whether they're a witness,

14  cooperating witness, defendant, or other.

15       So in any event, we're continuing to work, but my

16  point is just, there's a reason why we're objecting.  We're not

17  trying to be difficult for the sake of being difficult

18  genuinely.  And again, based on your Honor's schedule, maybe

19  there's no issue with delaying the trial by a day and you're

20  confident that if we bleed into a fourth week that's fine, then

21  there's no -- certainly that should go into your Honor's

22  consideration.

23       THE COURT:  A couple of observations.  One is that the

24  first trial date ordinarily is devoted to jury selection.  So

25  there's no substantive issue there concerning any testimony.

K1AATORCps

1          Second, this Court, the parties may or may not be

2     aware, has a practice of conducting full-day trials, starting

3     at 9 and usually going until 5.  That sometimes, compared to

4     the practice in other courts, could add as much as two hours

5     per day of trial time.

6          Third, in a case where we start losing time from the

7     estimated duration, it has been my practice to add overtime as

8     necessary so that on some days we could end at 5:30 or 6 or

9     start at 8:30 in the morning, and that way, by the end of the

10    trial, we will effectively have made up whatever time we may

11    lose.

12         So I think, by these means, I would not be concerned

13    about losing the one day at the start, with the understanding

14    of all parties that we're going to make it up.

15         MS. FENDER:  With that understanding, your Honor, then

16    we'll withdraw our objection.

17         THE COURT:  All right.  In that case, we will agree

18    that the trial will start one day later, on February 4th.  And

19    we will keep close tabs on the proceeding as it progresses.

20         And I first thank you for the cooperation that you've

21    exhibited today in moving matters along.  We can gain many

22    hours of additional time if the parties continue that spirit of

23    cooperation and enter into stipulations that would save our

24    having to listen to witnesses unnecessarily.  All right?

25         MS. FENDER:  Your Honor, given that we moved the trial

K1AATORCps

1    day, I suppose I need to exclude time to February 4th.

2              THE COURT:  All right.

3              MR. DONALDSON:  I of course will not be objecting to

4    that.

5              THE COURT:  All right.  In that case, on the

6    government's motion to adjourn time from speedy trial

7    calculations until the commencement of trial on February 4th,

8    no objections recorded by defendants, the motion is granted.  I

9    find that the reasons conveyed to the Court warrant this

10   exclusion of time, as it is intended to ensure the

11   effectiveness of counsel and prevent any miscarriage of

12   justice.  The Court is satisfied that the ends of justice

13   served by the granting of this continuance outweigh the best

14   interests of the public and defendant's in a speedy trial.

15             This order of exclusion of time is entered pursuant to

16   the provisions of the speedy trial Title 18 U.S.C. §§

17   3161(h)(7)(B)(2) and (4.)

18             Have a good day.  Thank you.

19             MS. FENDER:  Thank you, your Honor, as well.

20             (Adjourned)

21

22

23

24

25