UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

   -v.-                                                       S8 16 Cr. 809 (VM)

RANDY TORRES,
     a/k/a "Rico,"
WALSTON OWEN,
     a/k/a "Purpose,"
     a/k/a "Purp,"
CHARLES VENTURA,
     a/k/a "Gutta"

                    Defendants.

## DEFENDANT RANDY TORRES ADDITIONAL OBJECTS AND PROPOSED REQUESTS TO CHARGE

The law is clear that all factors that increase the maximum sentence must be set forth in the indictment, i.e., determined by the grand jury. <u>Apprendi v. New Jersey,</u> 530 U.S. 466, 120 S.Ct. 2348 (2000). Of course, it also must be proven beyond a reasonable doubt by the government. In the instant case, the indictment makes it very clear what is the basis of the Special Sentencing Factor to would increase Mr. Torres maximum sentence from twenty (20) years to life. It is the murder of Nestor Suazo.[1]

NOTICE OF SPECIAL SENTENCING FACTORS

> 12. On or about September 19, 2015, in the Southern District of New York, RANDY TORRES, a/k/a "Rico," and others known and unknown, intentionally and knowingly murdered and aided and abetted the murder of Nestor Suazo, a/k/a "Smaccs," 1n the vicinity of Hughes Avenue and East Tremont Avenue in the Bronx, New York, in violation of New York Penal Law, Sections 20.00 and 125.25, in that TORRES, with the intent to cause the death of a member of a rival Crip faction, did cause the death of Suazo, and under circumstances evincing a depraved indifference to human life, did recklessly engage in conduct which created a grave risk of death to another person, and thereby caused the death of Suazo, and did aid and abet the same, to wit, TORRES aided and abetted other members and associates of the Rollin' 30s who shot and killed Suazo, a member of a rival Crip faction.
> (Title 18, United States Code, Section 1962(d) .)

Your Honor has appeared to accept the government version of the Special Verdict in the Charge to the Jury. We oppose and object to this charge. As it is written, the charge broadens Mr. Torres exposure beyond the alleged murder of

---

[1] The previous paragraph set forth a separate murder as a Special Sentencing Factor for co-defendant Walston Owen.

Mr. Suazo. This is error. Mr. Torres may only be tried on the charges in the indictment. Stirone v. U. S., 361 U.S. 212, 215–18 (1960). As the Supreme Court made clear in Apprendi, 530 U.S. at 484.

> Since Winship, we have made clear beyond peradventure that Winship's due process and associated jury protections extend, to some degree, "to determinations that [go] not to a defendant's guilt or innocence, but simply to the length of his sentence." Almendarez-Torres, 523 U.S., at 251, 118 S.Ct. 1219.[2]

The government provided notice in the indictment and its proof must be limited to the notice provided for the sentencing enhancement.

> The question whether Apprendi had a constitutional right to have a jury find such bias on the basis of proof beyond a reasonable doubt is starkly presented. Our answer to that question was foreshadowed by our opinion in Jones v. United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), construing a federal statute. We there noted that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." Id., at 243, n. 6, 119 S.Ct. 1215.

Apprendi, 530 U.S. at 475–76. The government provided notice and must be bound by it.

**Requests for the Charge of Extreme Emotional Disturbance and Justification Under New York Law**

As a result of the testimony elicited at trial, two additional instructions must be given. Under New York law, because malice is not an element of the offense,

---

[2] In re Winship, 397 U.S. 358, 90 S.Ct. 106 (1970).

New York law provides for an affirmative defense of Extreme Emotional Disturbance.[3] Under 125.25, it is an affirmative defense that

> (a) The defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be. Nothing contained in this paragraph shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime....[4]

I have attached the requests for justification and extreme emotional disturbance. I also request that "and intentional" be added to the "Third Element of Count One - Association with the Enterprise in the 8th liner of the first paragraph. Further, we will have additional modifications to the instructions relating to the availability of witnesses and evidence. Clearly, cooperators are not equally available to defense counsel nor do we have the ability to obtain Facebook data. Further, while the government can offer Facebook posts and Direct Messages

---

[3] As a result of our research on this matter, we now believe that the New York murder statutes are not an appropriate basis for a RICO predicate. Racketeering activity, as defined in 18 U.S.C. § 1961 includes the state offense of murder but not manslaughter. As we have seen in numerous recent decisions relating to sentencing for violent crimes, the Supreme Court requires that the violent offense be a generic offense. New York does not require "malice" or "malice aforethought" as an element of murder. Most, or perhaps all other jurisdictions do require it. An intentional homicide without malice is generically voluntary manslaughter. Since manslaughter is not a racketeering activity, we will be requesting that paragraph 9a of the indictment be struck after we complete our research and file a separate motion.

[4] Counsel does not belief that there was sufficient proof for the offense of NYPL § 125.27 and it should be redacted from the indictment. Even if it is not, that section also provides for the affirmative defense of Extreme Emotional disturbance.

as statements of co-conspirators, defense counsel does not have the same authority under the Federal Rules of Evidence to do the same. We hope to provide your Honor with specific requests sometime on Wednesday.

                                      Respectfull submitted,

                                            /s/

                                      Sam A. Schmidt
                                      Andrew M. J. Bernstein
                                      Attorneys for Randy Torres

# EXTREME EMOTIONAL DISTURBANCE DEFENSE
(Revised Feb. 2016 and Dec. 2019)

**Penal Law § 125.25 (1)(a)[1]**
**Effective September 1, 1967**

**Penal Law § 125.26(3)(a)**
**Effective December 21, 2005**

**Penal Law § 125.27 (2)(a)**
**Effective September 1, 1995**

_____

If you find that the government has have proven beyond a reasonable doubt each of the elements of the charge of murder you must consider an affirmative defense of extreme emotional disturbance. That defense, if proved, does not relieve the defendant of responsibility for the homicide, but, under our law, it reduces the degree of the crime from Murder to Manslaughter in the First Degree. Remember, if you have already found the defendant not guilty of Murder, you will not consider the affirmative defense.

Under our law, it is an affirmative defense to a charge of Murder that the defendant acted under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse. The reasonableness of that explanation or excuse is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.[2]

The affirmative defense of extreme emotional disturbance has three principal components.[3]

First, the defendant must have had an extreme emotional disturbance, that is, the defendant must have had an emotional disturbance so extreme as to result in and become manifest as a profound loss of self-control.[4]

Second, there must have been an explanation or excuse for such extreme emotional disturbance that was reasonable. The reasonableness of that explanation or excuse must be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be.

Third, in committing the homicide or acting in concert in

committing the homicide, the defendant must have acted under the influence of that extreme emotional disturbance.

Your determination of the reasonableness of the explanation or excuse must be made initially by determining the situation in which the defendant found himself/herself, including the circumstances as he/she believed them to be at the time, however inaccurate that belief may have been. Then, you must determine whether, from the viewpoint of a person in that situation, the explanation or excuse was reasonable.

Remember, it is not the act of killing that must be supported by a reasonable explanation or excuse. It is the extreme emotional disturbance for which there must be a reasonable explanation or excuse.

Under our law, the defendant has the burden of proving this affirmative defense by a preponderance of the evidence.

In determining whether the defendant has proven the affirmative defense by a preponderance of the evidence, you must consider any relevant evidence whether introduced by the government or by the defendant.

A preponderance of the evidence means the greater part of the believable and reliable evidence, not in terms of the number of witnesses or the length of time taken to present the evidence, but in terms of its quality and the weight and convincing effect it has. For the affirmative defense to be proved by a preponderance of the evidence, the evidence that supports the affirmative defense must be of such convincing quality as to outweigh any evidence to the contrary.

If you find that the defendant has not proven the affirmative defense by a preponderance of the evidence, then, based upon your initial determination that the government has proven beyond a reasonable doubt each of the elements of Murder, you must find the defendant guilty of Murder.

If you find that the defendant has proven the affirmative defense by a preponderance of the evidence, then you must find the defendant not guilty of Murder degree as charged in the Special Interrogatory.

_____

1. Although the statute defines the defense as a defense to intentional murder, the Appellate Division has held that the defense applies to a charge of attempted murder (*see People v White*, 125 AD2d 932, 933 [4th Dept 1986]; *People v Tabarez*, 113 AD2d 461, 463 [2d Dept 1985] *aff'd on other grounds,* 69 NY2d 663 [1986]; *People v Lanzot*, 67 AD2d 864, 866 [1st Dept

# JUSTIFICATION:
# USE OF DEADLY PHYSICAL FORCE
# IN DEFENSE OF A PERSON PENAL
# LAW 35.15 (2)
# (Effective Sept. 1, 1980)
(Revised Jan. 2013; Feb. & July 2016; Jan. 2018)[1]

With respect to the Special Interrogatories, the issue of the defense of justification has been raised. This is also known as self defense. A defendant, however, is not required to prove that he or those he acted in concert with were justified. The government, under New York law, is required to prove beyond a reasonable doubt that the defendant or the person who caused the death were not justified.

I will now explain our law's definition of the defense of justification as it applies to this case.

Under our law, a person may use deadly physical force upon another individual when, and to the extent that, he/she reasonably believes it to be necessary to defend himself/herself or someone else from what he/she reasonably believes to be the use or imminent use of deadly physical force by such individual.

Some of the terms used in this definition have their own special meaning in our law. I will now give you the meaning of the following terms: "deadly physical force" and "reasonably believes."

Deadly physical force means physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.[2] Serious physical injury means impairment of a person's physical condition which creates a substantial risk of death, or which causes death or

serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ.3  The use of a knife or gun are clearly capable of inflicting serious physical injury.

The determination of whether a person reasonably believes deadly physical force to be necessary to defend himself/herself or someone else from what he/she reasonably believes to be the use or imminent use of deadly physical force by another individual requires the application of a two-part test.[4] That test applies to this case in the following way:

> First, the defendant or the person who caused the death must have actually believed that Mr. Suazo was using or was about to use deadly physical force against him/her *or* someone else, and that the defendant's or other person's own use of deadly physical force was necessary to defend himself/herself or someone else from it; and

> Second, a "reasonable person" in that person's position, knowing what the that person knew and being in the same circumstances, would have had those same beliefs.

Thus, under our law of justification, it is not sufficient that the defendant or person responsible for Suazo's death honestly believed in his own mind that he was faced with defending himself/herself or someone else against the use or imminent use of deadly physical force.  An honest belief, no matter how genuine or sincere, may yet be unreasonable.

To have been justified in the use of deadly physical force, the person using such force must have honestly believed that it was necessary to defend himself/herself or someone else from what he/she honestly believed to be the use or imminent use of such force by Suazo, and a "reasonable person" in the that person's position, knowing what the he knew and being in the same circumstances, would have believed that too.

On the question of whether the person using deadly physical force did reasonably believe that deadly physical force was necessary to defend himself/herself or someone else from what he/she reasonably believed to be the use or imminent use

2

of such force by Suazo, it does not matter that the person who used such force was or may have been mistaken in his/her belief; provided that such belief was both honestly held and reasonable.

The person using deadly physical force would not be justified if he/she was the initial aggressor of deadly physical force.

"Initial aggressor" means the first person who uses, or threatens the imminent use of, deadly physical force.

The actual striking of the first blow or inflicting of the first wound, however, does not necessarily determine who was the initial aggressor.

A person who reasonably believes that another is about to use deadly physical force upon him/her or another person need not wait until he/she or the other person is struck or wounded. He/she may, in such circumstances, be the first to use deadly physical force, so long as he/she reasonably believed it was about to be used against him/her or another person. He/she is then not considered to be the "initial aggressor," even though he/she strikes the first blow or inflicts the first wound.

If a person intervenes in a conflict in defense of another, that person is an initial aggressor only if he/she somehow initiated or participated in the initiation of the original use of deadly physical force or the threat to use it, or reasonably should have known that the person he/she was defending initiated it. On the other hand, if he/she neither initiated, nor participated in the initiation of deadly physical force, or the threat to use it, and had no reason to know who initiated it, then he/she is not the initial aggressor.[5]

The government is required to prove beyond a reasonable doubt that the defendant was not justified.

---

1. In January 2013, the definition of initial aggressor was revised to include language to better accommodate the dictates of *People v McWilliams*, 48

3

AD3d 1266, 1267 (4th Dept 2008) ("We agree with defendant that, where there is a reasonable view of the evidence that the defendant initiates nondeadly offensive force and is met with deadly physical force, the defendant may be justified in the use of defensive deadly physical force and that, in such cases, the term initial aggressor is properly defined as the first person in the encounter to use deadly physical force").

   The February, 2016 revision added a supplemental instruction for situations involving an intervener to accord with *People v Walker*, 26 NY3d 170 (2015); See endnote11.  A Note was also added at the end of the charge.

   The Jully, 2016 revision included instructions regarding the consideration of evidence of threats made by the deceased against the defendant.

  The January, 2018 revision provided more detailed instructions at the end of the charge on how to instruct the jury to consider counts with the lack of justification as an element. See text associate with endnote 15.

2.  Penal Law § 10.00 (11).

3. *See* Penal Law § 10.00 (9) & (10).

4.  *See People v Goetz,* 68 NY2d 96, 115 (1986).

5.  *See People v Walker,* 26 NY3d 170, 177 (2015).

This was modified for the facts of this case.